**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 14-cv-01785-MSK-MJW

JUANA ARMIJO;
APOLINAR VALENZUELA RAMOS; and those similarly situated

    Plaintiff,
v.

STAR FARMS, INC.; and
ANGELO PALOMBO;

    Defendants.

## FIRST AMENDED COMPLAINT

Comes now, the above Named Plaintiffs, on behalf of themselves and those similarly situated, with the following complaint:

### INTRODUCTORY STATEMENT

1. This is a case about the systematic abuse and exploitation of low-wage, seasonal, agricultural workers by the Defendants, Star Farms, Inc. and Angelo Palombo. The Defendants operate a large farm north of Denver and consistently fail to meet even the most basic workers' protections mandated by Federal law. Employees, often working twelve hour days under the hot Colorado sun, are not provided water to drink; are forced to choose between relieving themselves in the fields and walking long distances to filthy outhouses with no toilet paper or soap; and, after enduring these abysmal conditions, are frequently not paid their meager wages on time, if at all.

2. The named Plaintiffs, Ms. Juana Armijo and Mr. Apolinar Valenzuela Ramos, are the Defendants' former employees. Ms. Armijo is a fifty-four year old woman who is struggling to stay financially afloat on near-minimum wage pay. Mr. Valenzuela is 70 years old and began working for Defendant Palombo's father in or about 1965 and worked at Star Farms for roughly 48 years until late 2013. The Named Plaintiffs' lack of education and English language skills not only make it difficult for them to find work, but led the Defendants to believe that they could take advantage of them without repercussions. After enduring the atrocious working conditions on Defendants' farm, Ms. Armijo left, unpaid. Only after the intervention of Colorado Legal Services was Ms. Armijo able to finally, months late, get paid. After decades of crippling work at Star Farms, Mr. Valenzuela is no longer able to work and remains unpaid for a significant amount of time worked.

3. Here, the Named Plaintiffs, on behalf of themselves and other similarly situated current and former employees of the Defendants, look to hold the Defendants accountable for their systematic abuse of their employees.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1337 (commerce), 29 U.S.C. § 1801 *et seq.* (AWPA), 29 U.S.C. § 201 *et seq.* (FLSA), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' related claim under Colorado law.

5. Venue is proper pursuant to 28 U.S.C. § 1391. All Defendants are located in Colorado and the most serious acts and omissions occurred in Colorado.

## PARTIES

6. The Plaintiffs are natural persons residing in Colorado.

7. Defendant STAR FARMS, INC. (hereinafter "Star Farms") is a Colorado corporation with its principal place of business in Colorado.

8. Defendant ANGELO PALOMBO is a natural person residing in Colorado and at all times relevant to this complaint was a principal shareholder and/or agent of Star Farms.

## STATEMENT OF FACTS

9. In or around 1965, Mr. Valenzuela entered into an employment contract or contracts with Defendant Palombo's father to work on a seasonal basis on the father's farm in many facets of the farm's operations– *e.g.,* harvesting, cleaning, sorting, and packing produce -- as an hourly employee.

10. Several decades ago, Defendant Palombo's father died and Defendant Palombo took over the agricultural business. From that point forward, Defendant Palombo employed Mr. Valenzuela either individually or through a business entity. In any case, Defendant Palombo has controlled Mr. Valenzuela at least since the death of Defendant Palombo's father.

11. Defendant Star Farms employed Mr. Valenzuela seasonally starting when Star Farms was formed in 2004.

12. Mr. Valenzuela worked as a seasonal hourly employee for Defendants Palombo and Star Farms until late 2013.

13. Ms Armijo entered an employment contract with Star Farms to work as an hourly employee picking produce, mostly cilantro and parsley, and packing the produce into boxes or other containers in or around July 2012.

14. Ms. Armijo worked under the employment contract for several weeks, with the employment terminating in or around August 2012.

15. There were no posters or other notices describing employment rights at the jobsite.

16. During their empleyement, the Named Plaintiffs worked long hours, often 12 hours a day, outside, in the sun, bending up and down all day.

17. Ms. Armijo was not given a knife or other tools to cut the herbs, but instead brought her own implements from home.

18. The Named Plaintiffs and those similarly situated were not provided gloves to protect their hands and not provided soap to wash their hands after using the restroom, before lunch, or any other time during her long work days.

19. Perhaps most shockingly, the Named Plaintiffs were not provided water during their long work days in the fields.  Ms. Armijo often spent most of her lunch break walking to and from a store where she purchased water, leaving her no time to eat. Mr. Valenzuela was forced to quench his thirst by drinking from irrigation pipes in the fields and garden hoses in the packing warehouse.

20. When Ms. Armijo asked her supervisor for water during the work day, the supervisor laughed.

21. From the field where she worked, Ms. Armijo could see fields of other produce, mostly squash, corn, tomatillos, and cherries, which, upon information and belief, were owned and/or operated by Star Farms.

22. During her employment, Ms. Armijo worked closely with 3 other employees on a day-to-day basis.

23. Ms. Armijo saw between 5 and 10 men regularly assigned to work in the fields that she could see, and occasionally saw workers from other fields, upon information and belief, owned and/or operated by Star Farms, come in to help in the fields that she could see.

24. Mr. Valenzuela estimates he saw roughly 30 to 40 workers total working at Star Farms from 2011 until he left in late 2013.

25. The Named Plaintiffs understand that there was high turnover among the workers in at Star Farms.

26. Ms. Armijo and others with whom she worked closely were sent to work in other fields owned and operated by Star Farms on at least one occasion.

27. Ms. Armijo understood that there were many fields within Star Farms that she could not see from the field where she worked, and, upon information and belief, Star Farms workers cultivated all of the fields.

28. Only two outhouses were available to Ms. Armijo and others that worked near her on a day-today basis. These outhouses were located far away from the field where Ms. Armijo worked. To get there, Ms. Armijo either had to walk along a dangerous highway, or through a cornfield.  It took Ms. Armijo about twenty minutes to walk to the outhouses

       along the highway. Because the outhouses were so far away, Ms. Armijo's supervisor told her to relieve herself in the cornfield.

29. Ms. Armijo felt unsafe relieving herself in the cornfield and also felt unsafe using the outhouses because they did not lock, the doors would not stay closed, and they were located in a field where male workers worked.

30. The outhouses available to the Named Plaintiffs were very dirty, often did not have toilet paper, and did not have soap.

31. Mr. Valenzuela did not recieve *any* pay for some of his work on his regular pay days and is still owed significant unpaid wages.

32. Ms. Armijo did not receive payment for her work on the regular payday or upon termination.

33. She was paid the $857.50 she was owed months after her termination, only after the intervention of Colorado Legal Services ("CLS"). In response to an initial demand by CLS for the full $857.50, Ms. Armijo was only paid $522. After a follow-up demand by CLS, Ms. Armijo received the balance in November 2012.

## I. RULE 23 CLASS ALLEGATIONS

34. The Named Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully re-written herein.

35. The Named Plaintiffs assert their Count I Agricultural Workers Protection Act (hereinafter, "AWPA") claims and their Count III Colorado Wage Claim Act (hereinafter "CWCA") claims as a Fed R. Civ P. 23 class action on their own behalf and on behalf of classes for which the Named Plaintiffs seek certification.

36. Pending any modifications necessitated by discovery, the Named Plaintiffs preliminarily defines an AWPA class as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF THE DEFENDANTS WHO WERE VICTIMS OF THE DEFENDANTS' AWPA VIOLATIONS.

37. Pending any modifications necessitated by discovery, the Named Plaintiffs preliminarily defines a CWCA class as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF THE DEFENDANTS WHO WERE NOT PAID FOR SOME OR ALL OF THE WORK THEY PERFORMED FOR THE DEFENDANTS

38. The clases are so numerous that joinder of all potential class members is impracticable. The Named Plaintiffs do not know the exact size of the classes since that information is within the control of Defendants. However, Star Farms was incorporated in 2004, the Ms. Armijo worked closely with 3 other employees, the Plaintiff observed 5-10 employees working in a nearby Star Farms' field, there were several other Star Farms fields with employees working, and there was high employee turnover both during and between seasons. Mr. Valenzuela estimates that there were between 30 and 40 employees between 2011 until he left in late 2013.

39. Based on these facts, a conservative estimate of the size of each class is at least 100 people. The exact size of the classes will be easily ascertainable from Defendants' employment records.

40. There are questions of law or fact common to the classes that predominate over any individual issues that might exist. Common questions of law and fact include: the working conditions at Star Farms; the application of AWPA to those working conditions;

the Defendants' pay practices; the Defendants' failure to pay employees for some of their work.

41. The class claims asserted by the Named Plaintiffs are typical of the claims of all of the potential Class Members because they experienced the same or similar working conditions and pay practices as the Defendants' other employees. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy. This is especially true in the case of low-wage agricultural workers, like the class members here, who are un-sophisticated, are unlikely to seek legal representation, cannot realistically navigate the legal system *pro se*, and whose small claims make it difficult to retain legal representation if they do seek it.

42. The Named Plaintiff will fairly and adequately protect and represent the interests of the class. They were Defendants' employees and were victims of the same violations of law as the other class members, *i.e.,* the Defendants' failure to comply with AWPA by, including other violations, (1) failing to pay employees when payment was due; (2) failing to post posters notifying employees of their rights under AWPA; and (3) failing to provide working conditions that comply with applicable Federal health and safety standards. The Name Plaintiffs and those similarly situate were also all victims of Defendants' violations of the CWCA by failing to pay their employees for all of the hours the employees worked.

43. The Named Plaintiffs are represented by counsel experienced in litigation on behalf of low-wage workers and in class actions.

44. The prosecution of separate actions by the individual potential Class Members would create a risk of inconsistent or varying adjudications with respect to individual potential Class Members that would establish incompatible standards of conduct for Defendants.

45. Each Class Member's claim is relatively small. Thus, the interest of potential Class Members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and that the pertinent state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

46. The Named Plaintiffs are unaware of any members of the putative class who are interested in presenting their claims in a separate action.

47. The Named Plaintiffs are unaware of any pending litigation commenced by members of the Class concerning the instant controversy.

48. It is desirable to concentrate this litigation in this forum because Star Farms' principal place of business is in this jurisdiction and Defendant Palombo resides in this jurisdiction.

49. This class action will not be difficult to manage due to the uniformity of claims among the Class Members and the susceptibility of AWPA and wage claims to both class litigation and the use of representative testimony and representative documentary evidence.

50. The contours of the class will be easily defined by reference to the payroll documents Defendants were legally required to create and maintain. 29 C.F.R. § 516 *et seq.*

## II. 29 U.S.C. § 216(B) COLLECTIVE ACTION ALLEGATIONS

51. The Named Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully re-written herein.

52. The Named Plaintiffs bring their FLSA claim as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated current and former employees of the Defendants.

53. Ms. Armijo has previously filed written consent to be a Named Plaintiff in a FLSA collective action and Mr. Valenzuela's written consent to be a Named Plaintiff is attached to this Complaint as Exhibit 1.

54. Pending any modifications necessitated by discovery, the named Plaintiff preliminarily defines the "216(b) Class" as follows:

> ALL CURRENT AND FORMER EMPLOYEES OF THE DEFENDANTS WHO WERE NOT PAID FOR ALL OF THE HOURS THEY WORKED AND/OR WHO DID NOT RECEIVE THEIR WAGES WHEN DUE.

55. All potential FLSA Class Members are similarly situated because, among other things, they were all employees of Defendants and, upon information and belief, all suffered from the same policies of Defendants, including the failure to pay at least minimum wage on the regular pay day and the failure to pay employees for all hours worked.

## III. COUNT I: VIOLATIONS OF AWPA, 29 U.S.C. §§ 1801-1872
### (Class Claim Against All Defendants)

56. The Named Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully re-written herein.

57. As set forth above, the Named Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated employees pursuant to Fed. R. Civ P. 23.

58. This claim arises under the Migrant and Seasonal Agricultural Workers Protection Act, 29 U.S.C. §§ 1801-1872 (hereinafter "AWPA").

59. During certain times related to this complaint, the Named Plaintiffs and those similarly situated were "seasonal agricultural workers" as defined by the AWPA at 29 U.S.C. § 1802 and 29 C.F.R. § 500.20 because their work on the Defendants farm was short in duration and temporary and/or seasonal in nature.

60. At all times relevant to this Complaint, both Defendants were agricultural employers as defined by the AWPA at 29 U.S.C. § 1802(2) because, among other reasons, they owned or operated a farm.

61. The Defendants intentionally violated the rights of the the Named Plaintiffs and those similarly situated under AWPA by:

    i. Knowingly giving false or misleading information to the class members by, among other things, promising on-time wage payments and paying late. 29 U.S.C. §§1821(f) and 1831(f); 29 C.F.R. §500.77.

    ii. Violating, without justification, the terms of the working arrangements with the class members by, among other things, failing to comply with the applicable federal health, safety, and sanitation statutes and regulations. 29 U.S.C. §§1822 (c) and 1832(c); 29 C.F.R. §500.72; *e.g.,* 29 C.F.R. § 1928.110(c).

      iii.    Failing to post a notice at the jobsite stating the class members' rights under AWPA. 29 U.S.C. §§1821(b) and 1831(b); 29 C.F.R. §§500.75(c) and 500.76(d)(1)

      iv.    Failing to pay the class members wages owed when due.  29 U.S.C. §§ 1822(a) and 1832(a).

62. As a result, the Named Plaintiffs and those similarly situated suffered injuries and are entitled to damages.

## IV. COUNT II: FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF FLSA (29 U.S.C. § 201 *ET SEQ.*)
### (FLSA Collective Action Against All Defendants)

63. The Named Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully re-written herein.

64. The Named Plaintiffs and those similarly situated were engaged in the production of goods for commerce pursuant to 29 U.S.C. § 203(b) and 29 U.S.C. § 206(a) because they assisted in growing produce that moved, or could reasonably be expected to move, in interstate commerce.

65. As set forth above, the Named Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated employees pursuant to 29 U.S.C. § 216(b).

66. The Named Plaintiffs and all others similarly situated were "employees" as that term is defined by FLSA 29 U.S.C § 203 (e) because each entered into an employment contract or contracts with Defendant Star Farms. and the members of the 216(b) Class by, among other things, controlling when, where, and how they worked; maintaining their

employment records; setting the terms of their employment; and having the power to hire and fire them.

67. Defendants violated FLSA when they failed to pay

68. Defendants "employed" the Named Plaintiffs and all others similarly situated as that term is defined by FLSA 29 U.S.C. § 203 (g) because each was suffered or permitted to work by the Defendants.

69. Defendant Palombo employed the Named Plaintiffs and the similarly situated members of the 216(b) Class pursuant to FLSA 29 U.S.C. § 203(d) because he acted directly or indirectly in the interest of Star Farms in relation to the Named Plaintiffs the Named Plaintiffs and all others similarly situated at least minimum wage for some of the hours they worked on the regular pay day. 29 U.S.C. § 206.

70. Defendants' violations of FLSA were willful under 29 U.S.C. 255 (a) because they knew or should have known that the Named Plaintiff and all others similarly situated were entitled to minimum wage under FLSA, and/or, upon information and belief, they failed to make adequate inquiry regarding whether the Named Plaintiff and others similarly situated were covered by FLSA.

71. Named Plaintiff and all others similarly situated are entitled to recover unpaid minimum wages, liquidated damages, attorneys' fees, costs, and post-judgment interest. 29 U.S.C. §§ 206, 216(b).

## V. COUNT III: WILLFUL WITHHOLDING OF WAGES PURSUANT TO C.R.S. §§ 8-4-101 *ET SEQ.*
### (Class Claim Against Defendant Star Farms)

72. The Named Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully re-written herein.

73. As set forth above, the Named Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated employees pursuant to Fed. R. Civ P. 23.

74. Star Farms entered into employment contracts with the Named Plaintiffs and those similarly situated.

75. Under the employment contracts, the Named Plaintiffs and those similarly situated were to provide services on Star Farms in exchange for payment and Star Farms controlled when, where, and how the Named Plaintiffs and those similarly situated worked.

76. The Named Plaintiffs and those similarly situated performed services under the employment contracts and were not paid for some of these services.

77. Mr. Valenzuela and those similarly situated remain unpaid. They are still owed wages.

78. Ms. Armijo's employment contract ended August 3, 2012.

79. On October 2, 2012, Ms. Armijo, through Colorado Legal Services, sent a written demand to Star Farms demanding $857.50 in unpaid wages and stating where the unpaid wages could be received.

80. Star Farms responded to the letter on October 10, 2012 by sending Ms. Armijo a $522 check.

81. On October 22, 2012, Ms. Armijo, through Colorado Legal Services, sent a demand letter to Star Farms demanding the $335.50 balance of unpaid wages and stating where the unpaid wages could be received.

82. Star Farms responded with a check dated November 21, 2012, in the amount of the unpaid balance.

83. Star Farms is therefore liable to Mr. Valenzuela and those similarly situated for unpaid wages, reasonable attorney's fees, and costs.

84. Star Farms is therefore liable to Ms. Armijo for statutory penalties, reasonable attorney's fees, and costs.

## VI. DEMAND FOR JURY TRIAL

85. Plaintiffs demand a trial by jury for all issues so triable.

## VII. PRAYER FOR RELIEF

86. The Named Plaintiffs respectfully request an Order from this Court that:

a. This action be certified as a class action pursuant to Fed.R. Civ. P. 23;

b. Named Plaintiffs be appointed as class representatives of the Rule 23 Classes as defined above;

c. Undersigned counsel be appointed Class Counsel for the Rule 23 Classes;

e. The Named Plaintiff and the Rule 23 Class Members be awarded their AWPA damages, pre- and post-judgment interest, and costs.

f. This case also be certified to proceed as a collective action under 29 U.S.C § 216(b), and that appropriate notice of this suit and the opportunity to opt into it be provided to all potential members of the 216(b) Class;

g. Named Plaintiffs and the 216 (b) Class be awarded unpaid minimum wage;

i. Named Plaintiffs and the 216 (b) Class be awarded liquidated damages pursuant to 29 U.S.C. §216(b);

j. Named Plaintiffs and the 216 (b) Class be awarded post-judgment interest as permitted by law;

k. Named Plaintiffs and the 216 (b) Class be awarded costs and attorney fees pursuant to 29 U.S.C. § 216(b);

l. The Named Plaintiffs and the Rule 23 Class Members be awarded unpaid wages, statutory penalties, and attorney's fees pursuant to C.R.S. §§ 8-4-101 *et seq.*

m. Named Plaintiffs be awarded service awards.

n. The Named Plaintiffs, the 216 (b) Class, and the Rule 23 class members be awarded such other and further relief as may be deemed necessary and appropriate by the Court.

Dated: 11/19/2014

                                      Respectfully Submitted,

                                      /s/ Edward F. Siegel
                                      Edward F. Siegel
                                      Towards Justice
                                      1434 Spruce St. #100
                                      Boulder Co 80302
                                      Tel: (970) 343-4464
                                      Fax: (303) 957-2289
                                      E-mail: ed@towardsjustice.org

                                      s/Alexander Hood
                                      Alexander Hood
                                      Towards Justice
                                      601 16th St., Suite C #207

Golden, CO 80401
Tel.: 720-239-2606
Fax: 303-957-2289
Email: alex@towardsjustice.org

Attorneys for the Plaintiffs

# EXHIBIT 1

## CONSENTIMIENTO PARA ACCION FLSA

Por este medio doy mi consentimiento para que se haga una demanda por salarios que puede que me deben bajo la Ley de Normas Justas de Trabajo. Yo les autorizo a mis abogados a que me representen ante cualquier tribunal o agencia sobre estas reclamaciones, incluyendo la presentación de un caso el cual yo soy la parte Demandante en una acción colectiva de conformidad con 29 U.S.C. § 216.

NOMBRE  Apolinar Valenzuela

FIRMA   Apolinar Valenzuela

FECHA   10-14-14

8