IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-01785-MSK-MJW

JUANA ARMIJO;
APOLINAR VALENZUELA RAMOS; and those similarly situated

    Plaintiffs,

v.

STAR FARMS, INC.; and
ANGELO PALOMBO;

    Defendants.

---

**JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED 29 U.S.C. § 216(b) COLLECTIVE AND FRCP 23 CLASS ACTION SETTLEMENT**

---

The named Plaintiffs and the Defendants (collectively referred to as "Parties"), through undersigned counsel and pursuant to 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure ("FRCP") 23(e), respectfully submit this Joint Motion for Preliminary Approval of Proposed Collective and Class Action Settlement.

## I.    INTRODUCTION

After the help of Magistrate Judge Watanabe in a settlement conference on 8/27/2015, the parties were able to come to terms. The principal impediment to settlement was the Defendants' inability to pay. Magistrate Judge Watanabe spent significant time with Defendants to understand their financials, and even spent time on the phone with the Defendants' office manager to better understand the finances. Ultimately, a class-wide settlement was brokered involving a series of payments by the Defendants into a class fund for eventual distribution to

stipulated FRCP 23 and 29 U.S.C. § 216 (FLSA) classes. Additionally, the parties agreed on injunctive relief that would, with the Court's approval, be entered as a consent decree. In this motion, the parties jointly request that the Court preliminarily approve the settlement (attached as Exhibit 1) so that notice may be sent to the class, a fairness hearing may be set, and the parties can move toward final approval.

## II.     PROCEDURAL HISTORY

On 6/27/2014, Plaintiff Juana Armijo filed a class and collective action complaint against Defendants Star Farms, Inc. and Angelo Palombo (hereinafter, together, "Star Farms") alleging violations of the Agricultural Worker's Protection Act ("AWPA"); 29 U.S.C. § 1801, *et seq.*; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*; and the Colorado Wage Claim Act ("CWCA"), Colo. Rev. Stat.§§ 8-4-101 *et seq.* Doc. 1. On 1/7/2015, the complaint was amended. Doc. 41. The amended complaint mirrored the original complaint, but added Apolinar Valenzuela Ramos as a second named Plaintiff. The parties undertook extensive discovery, including a day-long inspection of Defendants' operation, leading up to the Plaintiffs' filing of motions to certify a FRCP 23 class and a conditional FLSA collective class. *See* Docs. 47 & 48. Shortly after the certification motions were filed, the parties began examining avenues for settlement and exchanged settlement offers. The parties agreed in principle on a class-wide settlement that included injunctive relief, but – largely due to Defendants' precarious financial position – were struggling to bridge the gap on the damages portion of the settlement.

On 8/26/2015, the parties participated in a settlement conference with Magistrate Judge Watanabe. After extensive examination of Star Farms' financial situation by Magistrate Judge Watanabe, including a conference call with Star Farms' office manager, the parties largely came

to terms. Through discovery and negotiation, the parties realized that Plaintiff Valenzuela's claim for unpaid wages was unique to him, while the class was entitled to compensation for violations of the AWPA and late payment under the FLSA. Shortly after the settlement conference, the parties came to terms in principle on a class-wide settlement on the AWPA and FLSA claims, which included injunctive relief enforced through a consent decree and a settlement fund filled through a series of payments by Star Farms. The parties worked together to finalize the settlement, and eventually signed the settlement agreement, attached hereto as Exhibit 1, which they now ask the Court to approve.

### A.     The Proposed Rule 23 and 29 U.S.C. § 216(b) Classes

As part of this settlement, and for the purposes of settlement only, the Parties also stipulate to the certification of the following FRCP 23 class and conditional certification of the following FLSA opt-in class:

   a. **The FRCP 23 Class**

   All workers who were employed by Star Farms and/or Angelo Palombo at any time from 6/27/2011 to the 11/13/2015[1].

   b. **The FLSA Class**

   All workers who were employed by Star Farms and/or Angelo Palombo at any time from 6/27/2012 to the 11/13/2015.

In support of these classes, the Plaintiffs point the Court to Plaintiffs' motions for FRCP 23 certification (Doc. 47) and for FLSA conditional certification (Doc. 48), and incorporate those motions by reference here. However, in Plaintiffs' FRCP 23 class certification Motion, they requested that Attorneys Alexander Hood and Edward Siegel be named class counsel. Mr. Siegel

---

[1] The Settlement Agreement is effective as of 11/13/2015.

is abroad on an extended trip and therefore the parties request that, along with Mr. Hood, Attorney Dermot Lynch be appointed class counsel in the place of Mr. Siegel. A declaration describing Mr. Lynch's qualifications is attached as Exhibit 5.

Further, the Plaintiffs as former employees, are adequate representatives of a class of former and current workers for purposes of obtaining this injunctive relief. *See, e.g., Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975), superseded in part by statute on other grounds as noted in Gutierrez v. Johnson & Johnson, 467 F. Supp. 2d 403, 414 (D.N.J. 2006).[2]

With regard to the FLSA opt-in class, the parties recognize that class members will need to affirmatively opt-in to take part in the settlement. By submitting claim forms, the class members are giving their consent, in writing, to taking part in the suit. The notice (Exhibit 2) and the claim form (Exhibit 3) make this clear to the claimants. The notice states:

> By filing a Claim Form and participating in the Settlement, a putative Class Member is agreeing to "opt-in" to the FLSA §216 (b) class.

The claim form states:

---

[2] Wetzel's reasoning, that former employees are adequate—in fact, superior—representatives of current employees in claims for injunctive relief, is a decades-old principle that is frequently reaffirmed in the context of both employment discrimination and wage-and-hour class actions in courts across the country, including the Tenth Circuit. *See, e.g., Rich v. Martin Marietta Corp.*, 522 F.2d 333, 340 (10th Cir. 1975) (favorably citing Wetzel for the proposition that "plaintiffs' voluntary departure from defendant's employ did not operate to prevent them from representing a class of past and present employees"); *De Grace v. Rumsfeld*, 614 F.2d 796, 810 (1st Cir. Mass. 1980) (similar); *Cross v. National Trust Life Ins. Co.,* 553 F.2d 1026, 1030-31 (6th Cir. 1977) ("The fact that plaintiffs are no longer employees of the defendant does not deprive them of standing to represent a class consisting of current and prospective employees."); *Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 238 (C.D. Cal. 2007) (endorsing Wetzel in the context of a class action under FLSA and collecting further authorities in support of this position); *Ladegaard v. Hard Rock Concrete Cutters, Inc.,* No. 00-C-5755, 2000 U.S. Dist. LEXIS 17832, at *6 (N.D. Ill. Dec. 1, 2000) (affirming this principle in the context of a state wage-and-hour class action).

> I understand that by signing this Claim Form I am agreeing to
> **OPT-IN** to the Collective Action under 29 U.S.C. §216 (b) *et seq.*

Finally, the parties also recognize that final approval of the FLSA class is necessary after the opt-in/claim period ends. *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001) (requiring final class certification after conditional certification). Further, as with all FLSA settlements, the Settlement will have to be finally approved by the Court for fairness. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (requiring court approval of FLSA settlement); *Baker v. Vail Resorts Mgmt. Co.,* No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014) (same). To that end, the parties will move for final certification of the FLSA class and approval of the FLSA settlement together with their motion for final approval.

**B.      Summary of Settlement Terms**

The Settlement provides for both injunctive and monetary relief to the classes.

**1.      Consent Decree and Injunctive Relief**

The parties request the entry of an injunction and that the settlement be entered by the Court as a consent decree so that the injunctive portion of the settlement can be enforced effectively through subsequent contempt proceedings. The parties request that the Court maintain jurisdiction over the case until July 1, 2019 – roughly a month after the last payment into the class fund is due – for enforcement purposes. The parties request that the following injunction be entered:

Defendants shall, in the course of any employment or labor contracting activities with any seasonal or migrant agricultural worker adhere to the following:

    a. ***Compliance with Health and Safety Regulations:*** Defendants will comply with all federal, state and local work place regulations applicable to Star Farms and/or Mr. Palombo, including, but not limited to:

        i. providing potable drinking water; accessible, clean, sanitary toilet facilities; and handwashing facilities in accordance with 29 C.F.R. § 1928.110;

        ii. posting all requisite notices at each jobsite in accordance with 29 C.F.R. § 500.76(d)(1) and 29 C.F.R. § 516.4.

    b. ***Future Payment of Wages:*** Defendants will comply with all wage statutes, including, but not limited to, paying wages to all Star Farm employees on a timely basis and without deviation from a set schedule on their weekly regular pay day. The wages shall be paid to employees either by cash, money order, or a check with sufficient funds in accordance with 29 C.F.R. § 500.81.

    c. ***Notice of Paydays:*** Defendants will post in a prominent place in each work site the payday schedule for all employees and the time and place of payment, as required by C.R.S. § 8-4-107;

    d. ***Posting of the Terms of the Consent Decree:*** The terms of the consent decree shall be posted at each worksite along with contact information for Plaintiffs' attorneys and appointed inspectors to report infractions.

    e. ***Compliance/Monitoring and Inspections:*** Plaintiffs' counsel and/or their appointed third-party inspectors can conduct inspections for compliance with the above provisions and all requisite federal, state and local statutes and regulations.

The inspections may take place at any time, however, inspectors shall avoid interrupting the Defendants' employees while they are working and will avoid speaking to such employees except during their break.

2. **Agreement Not To Retaliate:** Defendants acknowledge their obligation under the FLSA and the AWPA not to blacklist, threaten or otherwise discriminate against Plaintiffs and Opt-In Plaintiffs, as required by 29 U.S.C. § 1855(a), and not to discharge or in any manner discriminate against Plaintiffs and Opt-In Plaintiffs for asserting their FLSA rights, as required by 29 U.S.C. § 215(a)(3).

**2.     Monetary Relief**

The settlement provides that Defendants will fund a settlement fund with $55,000.00, through a series of payments. The dates and amounts of the payments are as follows:

| Payment Number | Due Date of Payment | Amount of Payment |
|---|---|---|
| 1 | within **2** weeks after the Preliminary Approval Date of this Settlement Agreement | $1964.30 |
| 2 | 3/15/16 | $1964.29 |
| 3 | 5/15/16 | $3928.57 |
| 4 | 9/15/16 | $3928.57 |
| 5 | 11/15/16 | $3928.57 |
| 6 | 3/15/17 | $3928.57 |
| 7 | 5/15/17 | $3928.57 |
| 8 | 9/15/17 | $3928.57 |
| 9 | 11/15/17 | $3928.57 |
| 10 | 3/15/18 | $3928.57 |
| 11 | 5/15/18 | $3928.57 |
| 12 | 9/15/18 | $3928.57 |
| 13 | 11/15/18 | $3928.57 |
| 14 | 3/15/19 | $3928.57 |
| 15 | 5/15/19 | $3928.57 |

The parties recognize that the payment plan is lengthy. However, the amount and length of the payment plan is dictated by Star Farms' ability to pay, which was vetted in a settlement conference by Magistrate Judge Watanabe. Additionally, Plaintiff Valenzuela will be compensated separately for his individual claims for unpaid wages in two payments of $3,600.00, totaling $7,200.00.

### 3.      Attorneys' Fees

The Plaintiffs' attorneys <u>expressly waive</u> any right to demand any attorneys' fees from the settlement fund. Ex. 1 ¶ 23.

### C.     <u>Notice, Notice Plan, Claim Form and Opt-Out Form are Reasonable and Should be Approved</u>

When a court determines that a settlement warrants preliminary approval, Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." The notice provided to a class certified under Rule 23(b)(3) must be the "best notice practicable under the circumstances." FRCP 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). Notice is sufficient "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted). The notice should inform class members "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded." FRCP 23(c)(2)(B). Mailing notice to each member of a settlement class "who can be identified through reasonable effort" is presumptively reasonable and sufficient. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

8

The parties propose the notice attached as Ex. 2 and the notice plan outlined in the settlement, *see* Ex. 1 at 8-9. The notice is sufficient as required by the requirements above and FRCP 23(c)(1)(2). Moreover, the notice plan is designed to provide notice to a high percentage of class members and will allow cash recovery, or opt-out, after filing just one claim document requiring minimal information. Ex. 2. Despite this, the Plaintiffs do not anticipate that more than 50% of Class Members will file claims. *Petruzzi's Inc. v. Darling-Delaware Co.*, 983 F. Supp. 595, 605 (M.D. Pa. 1996)("[T]here is virtually a statistical certainty that not all class members will file statements or proofs of claim when such filing is a precondition to sharing in a common recovery… response rates are often very small, and rarely exceed 50%.") (quoting Newberg on Class Actions 2d. § 10:14).

Finally, the parties also request that the Court approve the claim form (Ex. 3) and opt-out form (Ex. 4) for distribution to the class. The claim form will be colored green and the opt-out form will be colored red, familiar indicators of "go" and "stop." All 3 forms – notice, claim, and opt-out – will be distributed in Spanish and English, as the parties believe the majority of the class members are either bilingual in English and Spanish, or monolingual in Spanish.

### D.     Payment to the Settlement Class Members

The parties' payment plan is included in the settlement. Ex. 1 at 10-12. Because the settlement fund is being filled through a series of payments and because the amount of the fund is as yet unknown, the parties, and the settlement administrator, request some flexibility in distribution of the class fund to the classes. The parties suggest that the class administrator be given discretion to distribute funds to the class in a single payment once the administrator determines that the class fund, through payments received under the payment plan, contains

enough money to compensate the claims administrator *and* compensate class members who have made claims. The parties will propose a more detailed plan for this in their motion for final approval. Any money remaining in the class fund after distributions to the class and the class administrator will be used for enforcement purposes through the end of the consent decree, July 1, 2019, and then the trust will be liquidated through a payment to *cy pres*. Ex. 1 ¶ 23.

## III.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED PURSUANT TO FRCP 23

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Securities Litigation*, 2013 WL 4547404, at *3 (D. Colo. 2013) (quoting *Davis v. J.P. Morgan Chase & Co.,* 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)); *see* Manual for Complex Litigation, Fourth, § 21.61 ("The judicial role in reviewing a proposed settlement is critical, but limited to approving the proposed settlement, disapproving it, or imposing conditions on it. The judge cannot rewrite the agreement." (citing *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998) ("The settlement must stand or fall in its entirety.")). "A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Id.* (citing *In re Motor Fuel Temperature Sales Practices Litig.,* 286 F.R.D. 488, 492 (D. Kan. 2012)). The standards for preliminary approval of a settlement class are not as stringent as those applied for final approval. *Id.*

A.     **The Settlement is the Product of Informed, Non-Collusive, Negotiations**

There is a presumption that settlements are informed and non-collusive if the class is represented by experienced counsel, the settlement is the result of arms-length negotiation before an experienced mediator, and substantial discovery occurs prior to the settlement. Newberg on Class Actions 4th § 13:14 ("Courts also find an absence of collusion when settlement negotiations are conducted by a third-party mediator.") (Citing *In re Penthouse Executive Club Compensation Litigation*, 2013 WL 1828598, at *2 (S.D. N.Y. 2013) (granting preliminary approval of proposed settlement reached through negotiations that involved formal mediation, finding that the proposed settlement is non-collusive, as a settlement "reached with the help of third-party neutrals[which] enjoys a 'presumption that the settlement achieved meets the requirements of due process' " (quoting *Johnson v. Brennan,* 2011 WL 4357376, at *8 (S.D. N.Y. 2011); *see also Beaulieu v. EQ Indus. Services, Inc.,* 2009 WL 2208131, at *24–25 (E.D. N.C. 2009) (finding settlement procedurally adequate for the purposes of preliminary approval, in light of the fact that settling parties had participated in "substantial" discovery that "facilitat[ed] an informed decision" and moreover had engaged in adversarial negotiations that were "at arm's length and without collusion").

Here, all parties were represented by experienced counsel, the parties participated in significant discovery, and the settlement resulted from a settlement conference held before Magistrate Judge Watanabe. Proposed Class Counsel specialize in collective and class action wage and hour litigation on behalf of immigrant workers. They have substantial experience litigating FLSA §216(b) collective actions and Rule 23 class actions on behalf of low-wage

Spanish-speaking workers. *See* Doc. 47-12 (declaration of Plaintiffs' attorney Alexander Hood in support of class certification); *see also* Ex. 5 (declaration of Plaintiffs' attorney Dermot Lynch).

### B. The Settlement does not Improperly Grant Preferential Treatment to any Class Members

Other than the incentive payment to the named Plaintiffs (discussed *infra*), the settlement treats all class members equally. The parties have jointly agreed on amounts owed class members. Ex. 1 ¶ 20 ($2,000.00 each in AWPA damages and FLSA damages based on the length of employment, which will be computed upon receipt of the class list two weeks after preliminary approval). Each class member has the ability to claim his or her damages. If there is a deficiency in the settlement fund, all claims will be decreased *pro rata*. All class members have the ability to object to the settlement if they disagree with the calculation of their unpaid wages or any other component of the settlement.

### IV.   THE FRCP 23(e) FACTORS

Although compliance with the requirements of FRCP 23 (e) is not absolutely required at the preliminary approval stage, the settlement must meet those standards at the Fairness Hearing in order to obtain Court approval. Pursuant to FRCP 23(e), for final approval the court must make a "finding that [the settlement] is fair, reasonable, and adequate." FRCP 23(e) (2). "To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *In re Crocs, Inc. Securities Litigation*, Fed. Sec. L. Rep.

12

(CCH) P 97624, 2013 WL 4547404, (D. Colo. 2013) (Citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)).

These factors are supported by the following.

### A.     The Settlement Was Fairly and Honestly Negotiated

As discussed herein, the settlement was negotiated after months of discovery, by experienced counsel, and largely in front of Magistrate Judge Watanabe at a settlement conference.

### B.     Serious Questions of Law and Fact Exist

Serious questions of law and fact drove this settlement. The Defendants challenged the nature and extent of the AWPA violations and the frequency of the late payments that led to the FLSA violations.

### C.     The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief after Protracted and Expensive Litigation

The Defendants faced insolvency and bankruptcy if the litigation continued, which drove resolution of the case at the time, and in the manner, it settled. The settlement, guided by Magistrate Judge Watanabe, allows the Defendants to stay solvent, compensates the Plaintiffs and the class, and ensures real injunctive relief into the future. The alternative of potential bankruptcy would have resulted in little to no compensation for the Plaintiffs or the class.

### D.     The Parties Believe the Settlement is Fair and Reasonable

In jointly filing this Motion, the Parties stipulate that they both believe the settlement is fair and reasonable.

## V.     THE INCENTIVE PAYMENT TO NAMED PLAINTIFFS IS REASONABLE

Here, the parties jointly request that the Court preliminarily approve an incentive award of $3,500.00 to each of the named plaintiffs. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement. *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003).When evaluating the reasonableness of an incentive award, courts may consider factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

As described above, Ms. Armijo and Mr. Valenzuela came forward when their co-workers would not, did so despite concerns about possible retaliation, advocated for the interests of the entire class, risked immigration-law consequences and possible retaliation, provided valuable assistance to Plaintiffs' Counsel, and led the negotiations leading to the settlement. Therefore, the proposed service award is reasonable. *See*, *e.g.*, *Van Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award to a single class representative); *Glass v. UBS Fin. Servs., Inc*., 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (approving incentive awards of $25,000 to each named plaintiffs in a wage and hour case); *Rausch v. Hartford Fin. Servs. Group*, 2007 WL 671334 (D. Or. Feb. 26, 2007) (approving $10,000 incentive award per named plaintiff).

14

### VI.     APPROVAL OF THE SETTLEMENT ADMINISTRATOR

Plaintiffs' counsel has Vantage Settlement Advisory Group, a Division of Vantage Financial Group, ("Vantage") as settlement administrator. Vantage has assisted Plaintiffs' counsel with the preparation of the notice, claim form, and opt-out form and has been approved as a settlement administrator in the District of Colorado recently. *See Mancia Rivera v. Carniceria y Verduleria Guadalajara Inc. et* al, 13-cv-02309-REB-MJW, Doc. 29 (Apr. 9, 2015 order preliminarily approving settlement). Plaintiffs request that Vantage be approved as the settlement administrator in this case.

### VII.     CONCLUSION

WHEREFORE, the Parties respectfully request that the Court enter an Order that:

1. Preliminarily approves the Settlement Agreement as fair, reasonable, and adequate to the collective and class action classes;

2. Conditionally certify the action as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b) (hereinafter "FLSA Collective Class");

3. Certify a settlement class for claims brought pursuant to FRCP 23(e) (hereinafter "Rule 23 Class");

4. Preliminarily approve Alexander Hood and Dermot Lynch as class counsel for the Rule 23 Class, pursuant to FRCP 23;

5. Preliminarily approve the named Plaintiffs as the class representatives for the Rule 23 Class, pursuant to FRCP 23, and preliminarily approve an incentive award to each of them of $3,500.00;

6. Approve the form, contents and method of notice to be given to the Rule 23 Class as set forth in the Settlement Agreement;

7. Designate Vantage Settlement Advisory Group, a Division of Vantage Financial Group, Inc. as the settlement administrator ("Settlement Administrator") of the settlement and instruct the Settlement Administrator to disseminate, in accordance with the terms of the Settlement Agreement and the Preliminary Approval Order, the settlement notice to the class;

8. Establish procedures and schedule deadlines for persons to object to the settlement, the Settlement Agreement, or class counsel's fee application;

9. Schedule the fairness hearing for a date approximately, but no sooner than, 42 days after the deadline for submitting claims;

10. Schedule deadlines for the filing of: (a) documents in support of entry of the Final Approval Order; (b) objections to the settlement, class certification, appointment of class counsel, and the approval of the representative Plaintiffs as the representative of the class;

11. Provide that any timely objection to the settlement shall be heard and considered by the Court at the fairness hearing; and

12. Provide that the fairness hearing be continued or adjourned by order of the Court.

                                Respectfully Submitted,

                                s/Alexander Hood_
                                Alexander Hood
                                CO Bar # 42775

Towards Justice
1535 High St., Suite 300
Denver, CO 80218
Tel.: 720-239-2606
Fax: 303-957-2289
Email:alex@towardsjustice.org

s/Dermot Lynch
Dermot Lynch
CO Bar # 45188
Towards Justice
1535 High St., Suite 300
Denver, CO 80218
Tel.: 720-239-2606
Fax: 303-957-2289
Email: dermot@towardsjustice.org

*Attorneys for the Plaintiffs*

/s Larry M. Snyder
Larry M. Snyder #7667
3300 East First Ave. #690
Denver, CO 80206-5809
Tel. 303-321-0800
Fax 303-468-6039
E-Mail: lmsnyder@firstavelaw.com

*Attorney for Defendants*

17

## Certificate of Service

  I hereby certify that on 11/13/2015, I served a true and correct copy of the forgoing on the individuals below pursuant to FRCP 5.

*Attorney for Defendants*
Larry Snyder

               <u>s/ Alexander Hood</u>
               Alexander Hood